This morning we only have one case on the calendar. 2008-50102 EASTERN SHAWNEE TRIBE v. United States. It's on remand from the U.S. Supreme Court. And I thought, and the court has decided, that we would allow the government to go first on the argument. And why don't we proceed on that basis. Mr. Yang. Good morning. May it please the court, I'm Anthony Yang, and I'm appearing on behalf of the United States. When this case was previously before the court, the court held that the tribe's two cases, the case in the Court of Federal Claims and the case in District Court, arise from the same set of operative facts. And that the remaining question under this court's decisions in Lovelace and Tohono was whether they sought the same relief. Now that the Supreme Court in Tohono has made clear that the same relief inquiry is irrelevant to Section 1500, the case must be dismissed. Let me ask you a couple of questions about the posture of the District Court case here. Has the government moved to dismiss that case on jurisdictional grounds? Not yet. There have been a number of cases, tribal trust cases proceeding in the District Court. Some of them have been put on ice pending the resolution of motions to dismiss in other cases. So this case has been one of the cases that no substantial action has been taken for quite some time. Is the government's view that the District Court lacks jurisdiction? Yes, although the answer to that is a little complicated. It lacks jurisdiction to pursue the claims as they have been pursued in these Indian trust cases to encompass a type of what's called a historical accounting, going back and revisiting transactions, in some cases back a hundred years, and determining whether there was wrongdoing, malfeasance in the government, either collecting or investing. That type of case, we believe, it goes well in excess of the District Court. Because of 702 or 704? Well, I think ultimately it could be both. Section 702 requires that the waiver of sovereign immunity under the APA be limited to claims other than money damages. And when these suits are brought, they often either have a catch-all seeking all other equitable relief, or they also expressly have a cause of action seeking restatement of account. And we think that that type of relief ultimately would be one that is not other than money damages because under the Supreme Court's decision in Department of the Army v. Blue Fox, the relevant inquiry is whether they're seeking specific relief or substitute relief. And we believe that that is substitute relief. With respect to 704, the Supreme Court's leading decision, of course, is Bowen v. Massachusetts. But this court has since opined on it. And I believe you, Judge Dike, had a case called Christopher Village back in 2004, which discussed the question of no other adequate relief under Section 704. And in these types of cases where the plaintiff in District Court is seeking a declaration, essentially, of violations of certain duties that could be then carried across town to the Court of Federal Claims, we believe that that actually is kind of improper claim splitting and ultimately is an ancillary type of a proceeding that properly should belong in the Court of Federal Claims. And I believe at page 144 of the joint appendix in this case, a plaintiff admitted that they could simply proceed in the Court of Federal Claims on these cases, but that they're seeking more information on their claims through the accounting. Suppose, hypothetically, that you were to make a motion to dismiss on jurisdictional grounds in District Court and you were to succeed in getting the District Court to dismiss. Right. Under Loveladies, then 1500 wouldn't apply, correct? Prior to Tohono, that may well be true. But our view is that the Ombud Court's decision in Loveladies has now been entirely superseded by Tohono, and I'll explain why. Loveladies explained that the precise issue, and I'm using, quoting, precise issue in this case was the meaning of claim. And it went on to say that the relevant question, legal question, was whether Kasman's understanding of claim as requiring an inquiry into the relief sought was the appropriate inquiry. And ultimately, the court concluded, this whole discussion ranges from pages 1549 to 1551, ultimately the court concluded that Kasman, it would adhere to the Kasman approach, and that in order to trigger Section 1500, you must have cases that arise from the same operative facts and seek the same relief. The court then went on to proceed to apply that same relief inquiry in the context of the government's argument. It rejected the government's argument that the cases sought the same monetary relief because they were both takings claims. The court first noted that the district court agreed with the government in the district court case that the takings claim in count one was without legal significance because the court lacked jurisdiction, and it dismissed that claim. And then the relevant portion of Loveladies' analysis, and this is on page 1554, the court concludes, the prayer for a declaration of a taking for which the first count was a predicate, that is the count dismissed, was thus equally without legal significance. So what Loveladies ultimately was doing was applying the same... The Supreme Court in Tohono didn't even cite Loveladies, right? No, but Loveladies, of course, was the predicate for Tohono. The panel in its opinion for this case specifically noted on, I think on page 1311, we applied in Tohono the test for jurisdiction under section 1500 set forth in our opinion in Loveladies. I don't think there's really any dispute that Loveladies was the guiding jurisprudence that led to Tohono, and the Supreme Court, of course, rejected that squarely. But Tohono didn't discuss the jurisdictional question, our decision in Tohono. It didn't. The parties, of course, brought that to the attention of the court, and there was a dispute about the district court's jurisdiction even in Tohono, but I think the court had no need to address it. There's a few other things that obviously are in play. I mean, I think as Judge Moore recognized in her occurring opinion, the en banc decision in France Equipment would be controlling, and we agree with that, and particularly when you read the France Equipment in light of what happened since. In Keene, the Supreme Court in 1993 addressed a section 1500 issue where the relevant district court opinion case was a Southern District of New York case, which was dismissed for want of subject matter jurisdiction five days before the CFC, second CFC case actually in that case, was brought. And Keene applied section 1500 and specifically addressed the question whether section 1500's inquiry was somehow changed because the district court case had been dismissed. And this is, I believe, section two of Keene. And the court said, we look to if there was a pending suit at the time that the CFC case was initiated, leaving aside the TECON question, which the government has some views on, but that's not presented here, but if the district court case was pending when the CFC suit was brought, section 1500 was triggered. Whatever Keene might have meant, certainly Loveladies tells us that the jurisdictional dismissal doesn't come within the Keene rule. Loveladies did that in the context of the foundation that Loveladies was working on, which is when the relief sought was relevant. The relief sought was without legal significance. That's what Loveladies ultimately holds, and we think that entire rationale, both the broader legal principle and the specific application in Loveladies, has been entirely superseded by the court. It was inconsistent with France equipment, and the court in Loveladies never attempted to distinguish France. It would be odd if they sought to overrule it. It was inconsistent with the application in Keene, and it is also inconsistent, and we can talk on first principles, with the text of section 1500, the legislative history, and both the purpose of the statute and the absurd results that would flow from a contrary rule. The text of 1500 applies when there is a pending suitor process in any other court against the United States or its agent, and the CFC claim is either a claim for that suitor process or in respect to that suitor process. In Tohono, the Supreme Court made very clear that the broad language bars not only identical but related claims, and there is some substantial factual overlap. Now, the text of the statute is not triggered on district court jurisdiction. It simply requires a pending suit. I've never understood the word pending to imply pending with jurisdiction, and in fact, Congress used the term jurisdiction in section 1500 to refer to the jurisdiction of the Court of Federal Claims. It would be very odd for Congress to predicate the word pending suitor process on jurisdiction when it used jurisdiction in the same statute and yet said nothing about it with respect to the district court. So you're saying that, in effect, if they file in the Court of Federal Claims first and then file in the district court, it would be fine in the 1500? No, we actually, under TECON, under TECON, that would be the rule. There is some question whether TECON would be binding on a panel, and we think that TECON is both wrong and significantly undermined by the Supreme Court's decision in Tohono. They say specifically. They don't go under the TECON issue. I totally agree with that. It's not before them. And it's not before this court. But even before TECON, the Court of Claims and en banc decisions had applied section 1500 in the TECON instance, where the district court suit was brought after the CFC. In my view, there is some question whether TECON is good law because it is not an en banc decision overruling the prior decisions of this court. But even if not, there is a secondary question of whether TECON should remain good law, and that issue is being litigated in other court cases right now. And I'm sure we'll come to this court in an appropriate case soon. But what we have here is not a TECON situation. We have a situation, and just briefly, the statute actually used to say plaintiffs shall not file or prosecute. When Congress made that change to jurisdiction in 1948, the Supreme Court addressed that in Keene and made clear that when you have a codification statute like we had in 1948, which brought forth the current section 1500, that you need a kind of a clear express statement by Congress to change the rule. And the only two Supreme Court cases prior, I believe it was both Skinner and Eddy in Corona Court, it applied the section 1500 in the TECON instance, where the district court case was brought second. So there's all kinds of reasons why TECON is wrong, and we can have that discussion. It'll be an interesting one in a subsequent case. But what we're talking about here is a non-TECON situation. But the problem is this, that if you succeed on your TECON theory, then there's basically no way that a tribe can protect itself. No, there is. The tribe should file a court case if it wants to seek money damages in the court of claims. This is all within the tribe's power, and particularly going forward. I mean, Congress in section 1500, as the Supreme Court explained in Tohono, the intent was clear. It is to prevent the United States from carrying the burden of having to defend itself in duplicative lawsuits. It stems from 1868. Couldn't the tribe also file first in the district court, and then realizing its error, if it was going to be deprived of jurisdiction in the court of federal claims, withdraw, voluntarily dismiss, or otherwise dispose of the litigation in the district court, and then go forward? That's exactly it. So it's all within the tribe's control. That's not exactly correct. That's not exactly correct, because if the only relief that you can obtain to stop a project on an Indian reservation, which has been approved by the federal governor, proceeds, and the tribe has to go in the federal district court to get an injunction, hypothetically, against that project from proceeding, which it already started. Now, how do they get an injunction from the court of federal claims while they're seeking damages? Now, you need the injunction first to stop the project, and you can only get that in the federal district court. And then you can seek damages from the court of federal claims if you obtain the injunction for the damages, which could have been imposed on the tribal reservation. Your Honor's question raises a bunch of points, and I'd like to address them if I may. Please. The first is a presumption that if hardship results, the court should somehow find a way around the hardship. That has been rejected now thrice, three times, in the Supreme Court. Corona Cole, Keene, and Tohono. The court specifically addressed it, that the policy considerations regarding hardship are for Congress to decide, and that the role of the courts is to apply the statute as written, and that hardship might result. That's one answer. The second answer is that a normal APA suit, and these are by no means normal APA suits that are going on in the district court. A normal APA suit should proceed on an administrative record. When they proceed on the administrative record, they move rather expeditiously to summary judgment. A court rules. You can get, in the mine run of normal APA cases, both a district court suit reaching final judgment and an appeal, if you seasonably bring that suit and still fit within the six-year statute of limitations for the CFC. So if tribes will seasonably pursue an APA claim, they can proceed, they can go through an appeal, and if for some reason things go poorly, and in the unusual case, they don't approach that six-year statute of limitation, they can always dismiss. As Judge Moore said, if they make the choice to proceed and pursue money judgment in the court of claims, they can do so. It's all within their power. What Congress made very clear in 1868, and has reaffirmed, in fact, by expanding the statute, in 1948, in response to the Supreme Court's decision on acts of navigation, is that the government should not be put to the burden of defending itself when two suits arise from the same operative facts. And that flows also from the fact that the United States, as sovereign, waives its sovereign immunity upon the terms and conditions upon which Congress prescribes. And then that sets forth and limits the federal court's jurisdiction to hear claims against the United States. But until Tohono was decided by the Supreme Court, the relief part was very critical as to whether or not you were seeking the same relief. It was under this court's jurisprudence. Now the Supreme Court has decided the facts are, if they're substantially similar, then you have to go with a different analysis. That's right. The Supreme Court has construed Section 1500 as the government believes is correct. Can I just ask a factual question for clarification? I have the docket sheet for Eastern Shawnee here, which I recognize is case 06-CV2162. In the docket sheet, though, for Eastern Shawnee, dated July 24, 2008, it's an entry for proceedings held before Judge James Robertson, motion hearing held, and then in parentheses it says 58 in 06-CV2239, motion to dismiss for lack of jurisdiction filed by Dirk Kempthorne, taken under advisement. So explain this just to me. So I want to make sure factually there has been no motion to dismiss in this case, correct, in Eastern Shawnee? That is my understanding. And that docket entry is reflective of other motions to dismiss that are proceeding in all these similar cases. It's a totally separate case, but currently there is no pending motion to dismiss for lack of jurisdiction that is not being acted on. That is correct. That is correct. Is there a motion for a stay in the proceedings in the district court? I think the proceedings have been effectively stayed. If not, I think there might be an order to have stayed proceedings. Of course, in our view, that's not going to be relevant to the Section 1500 inquiry. But the proceedings in district court are not actively being litigated. Well, there was a joint status report just filed on July 20th of this year. What did that say? I didn't look at it. It just says things are— These status reports have been filed numerous times in the case, basically letting the court know where things are going on, various things. But the reason the status reports have been filed is because the case is not being litigated, and the court simply asks the parties to come back periodically and say, where do things now stand? Should we restart things? Is this 702, 704 question that exists in these cases in the district court being addressed in a way that's either before the D.C. Circuit or about to be before the D.C. Circuit? What's the situation? Well, I think we'd have to look carefully at how to proceed. I mean, a lot of these cases—  I'm asking a factual question. Well, we've litigated these cases for quite a long time and gone up to the D.C. Circuit and a number of them in the Cobell litigation, and we've not always had what we believe to be correct results in that. And now we'll have to decide how to proceed. It may well be that— Is the answer that there isn't a pending case before the D.C. Circuit about this now? I'm not aware of a pending D.C. Circuit case raising 702 and 704. And the D.C. Circuit, frankly, has rejected a lot of the government's arguments in this regard. We think the D.C. Circuit is wrong, but we are now litigating in the D.C. Circuit. And, you know, the litigation may well take a significant change, of course. I'm not understanding what you're saying. We're now litigating in the D.C. Circuit. We're not trying to bring back things that we've already lost to the D.C. Circuit, but there may now— There are no pending cases that you're aware of. That I'm aware of. How do you stop it there? There are no pending cases that you're aware of. Right. But going back to the merits of the relevance of whether a district court jurisdiction is relevant in Section 1500, beyond the fact that pending is not, I think, fairly stretched to mean pending with jurisdiction, particularly with the fact that jurisdiction is there, and in addition to the fact that this is a limited waiver of sovereign immunity, the legislative history, I think, also points pretty strongly in the direction of Congress's intent to make the jurisdiction of the other court irrelevant, because what Congress was doing in 1868 was targeting the Cotton claimants. Judge—excuse me, Senator Edmonds was the senator who proposed Section 1500's predecessor, and it was in the conjunction of a number of—about three statutes that were proceeding simultaneously in Congress after the Civil War. This is actually discussed at some length in our reply brief in Tohono, which is available online, but the relevant point is that Senator Edmonds made clear that of those hundred or so suits that Section 1500 ultimately was the ones that targeted, some had been brought and the Secretary of the Treasury had been served, and others—which, remember, this is brought all across the United States— had been brought, but the Secretary had not yet been served with process, and therefore the cases were simply sitting on the docket waiting for the Secretary to ride on his horse through the relevant jurisdiction and be served. And Congress wanted to put a stop to all of that. And that's why Section 1500 is triggered not only by any suit, but any suit or process. If process is pending, if you've not been served, then Section 1500 still applies. And, of course, if you haven't been served, there is no personal jurisdiction. That's an age-old rule. So the legislative history, I think, points very strongly in the direction that we're reaching here. Well, but it doesn't address subject—they're not addressing subject matter jurisdiction. Well, but I don't think that subject—the distinction between jurisdiction—ultimately, jurisdiction is the court's power to hear a case. Subject matter jurisdiction, if it lacks subject matter jurisdiction, it can't hear a case. If it lacks personal jurisdiction, it can't hear a case. Well, personal jurisdiction can also be weight, right? It can, but if it's not, it lacks the power to hear the case. And the statute made no distinction between subject matter and personal jurisdiction, let alone any jurisdiction with respect to the other court. So I think it would be a very difficult interpretive path to get to, to find that you can draw a distinction between personal and subject matter jurisdiction. Then, finally, purpose. I mean, Tohono has now made clear, and the court found clear, the purpose is clear from the statute, as it said, to save the government from the burdens of redundant litigation. As we've discussed, the government disagrees with whether jurisdiction might be proper in district court. And the panel's opinion, I think, gave some suggestion that the panel had some question about whether district court jurisdiction is, in fact, properly being exercised. But the result of, if this court disagrees and says, district court, you lack jurisdiction, we disagree with you, we disagree with the D.C. Circuit, it's a little odd that the court is opining on another court's jurisdiction over which— I don't think that's what we're talking about here. I think what we're talking about is two things. Whether Love Ladies survives Tohono. In other words, if there is an actual dismissal by the district court for lack of jurisdiction, whether the court of federal claims can then continue with the case. And if the answer to that is that Love Ladies does survive Tohono, then the question becomes whether it's appropriate under any circumstances to defer resolution of the court of federal claims case pending the outcome of the government's jurisdictional argument in the district court. Well, I think that would be fly in the face of Keene, actually. Because Keene addressed the question of whether, you know, how do you approach the question of when this other case is pending. And Keene specifically addressed the Southern District of New York case that was dismissed for want of jurisdiction because there was no waiver of sovereign immunity. Keene specifically cites to the Second Circuit's opinion affirming that judgment. And applies Section 1500 and says that we look to the point at which the CFC action was filed. And remember, in Keene. Your problem with that, though, is that Love Ladies came after Keene, construed Keene, and everybody agrees that Love Ladies said that if the district court case has been dismissed on jurisdictional grounds, 1500 doesn't apply. I think this court has a choice now. I mean, Keene was, I think, quite clear in its ruling. Love Ladies could be construed in multiple ways. We think the most reasonable way is to construe Love Ladies in light of the court's own discussion saying the precise issue in this case. This is on page 1549, the beginning of this discussion. The precise issue in this case is the meaning of claim, whether we are going to adhere to CASMIN, and whether relief is relevant. And then in applying, after concluding that relief was relevant, the same relief inquiry that Love Ladies established was relevant. It went to say that the relief sought, the prayer for relief sought in the district court, which is what Love Ladies decided, you know, you look to the complaints prayers for relief. The prayer for relief was without legal significance. The very premise for the whole analysis about jurisdiction was the relief. Mr. Yang, one thing you haven't touched on in response to Judge Jike's suggestion that a possibility exists that this proceeding would have to be stayed until such time as the government's jurisdictional arguments are in fact addressed by the district court. I want to make sure that I understand whether or not you think this case is an appropriate vehicle for that, given that the government has not even made a motion for a lack of jurisdiction in this case. So whether or not you think this court would be in good standing to say it should be stayed, and then we would order the district court to address an issue that no party has raised in the case. It would be an odd case to do that, but I would note that the government has moved to dismiss in other cases which are similar. And I would hesitate to disabuse the court of the view that we, at some point, I think it's likely that we will seek to dismiss the district court proceeding. But one of the things that came up in both the argument in Tohono as well as in the court's opinions, Justice Ginsburg dissented on the very ground that you should hold cases, just stay them so they don't proceed simultaneously, in her opinion. Well, but she wasn't addressing a stay pending a jurisdictional decision, right? Yes, Your Honor, but I don't think that distinction, frankly, withstands scrutiny. If the court were to make that distinction, I think it would be one that would be very difficult to justify. Finally, I would like to discuss, if I might, the purpose and absurd results that would result. I mean, if the court ultimately were to decide Section 1500's inquiry. Remember, Section 1500 doesn't talk about stays. It talks about jurisdiction, that if the jurisdiction of the CFC were to turn on the jurisdiction of the district court and the court were to say, we think the district court's jurisdiction is somehow questionable, therefore we're not going to dismiss as required otherwise by Section 1500, you would lead to the absurd result that you'd have two cases pending going forward, could be even on the identical claims in two courts. And that's precisely contrary to what the Supreme Court made clear that that purpose of Section 1500 is. Does that depend on our interpretation of pending at that point? I guess that's true, but I don't think that pending can be fairly construed to say stayed. It's not pending if it's stayed. I guess the government has taken a position that pending doesn't mean pending. No, pending means that it is in the court. It has been filed. In the court with proper jurisdiction. No, regardless of jurisdiction, whether it is pending. Once it's been filed in district court, in fact, even before service, the case is pending until it is dismissed. Now, then the question is, what's the effect if there's any overlap? If the district court case, as this case was filed eight days before the Court of Federal Claims, let's say it was dismissed tomorrow. What would be the legal impact of that? Well, Keene answers that question, squarely holds, that you look to the Court of Federal Claims filing. Once the Court of Federal Claims loses jurisdiction, you don't get jurisdiction out of some dismissal elsewhere. And that, I also think, flows from a very logical policy consequence as well, flows from this text. But the logical policy is that you don't want the government burdening under two duplicative suits simultaneously, and then have the litigant dismiss one and revive the other when the statute targets the CFC's jurisdiction. And this is not dissimilar than another context where, for instance, you fail to exhaust. Let me, I'm sorry, let me ask you one other question so I'm clear about this. Let's suppose that the district court, that the Court of Federal Claims suit is dismissed under 1500. And then sometime later, the district court suit is dismissed for lack of jurisdiction. If the statute of limitations has run on the claim, the tribe is out of court, correct? There's no equitable tolling under those circumstances. Correct. That is correct. And again, we're not saying that in some instances Section 1500 might lead to harsh results. That was specifically framed before the Supreme Court in Tohono as well as in Keene. And the Supreme Court made clear that any hardship that might result is a question for Congress, because Congress, through legislative grace, has allowed litigants to sue the United States in this very specialized court, which dates back to Section 1500, vesting the court with a sliver of Congress's power under the appropriations clause to tap the federal fisc. That power is strictly construed, the waivers are strictly construed, and if there is hardship, it is for Congress to resolve that hardship. If there are no further questions. Thank you, Mr. Lane. Thank you. We'll give you a few minutes for rebuttal. Thank you. Since you were up first. Mr. Leinbach. May it please the Court. My name is Brian Leinbach, and I represent East Shoshone in this matter. And I first want to make a couple of comments about the jurisdictional issue in the district court. Obviously, this is of some import to the court. That issue has been raised in the district court in other cases, which also deal with the Indian Trust mismanagement litigation. It has not gone particularly well for the government in those cases. Judge Robertson has ruled that there is jurisdiction in the district courts when presented with that issue. Counsel is correct in that that motion has not been brought in connection with this particular case. But after five years of litigation and efforts to resolve the Eastern Shawnee case, the 1500 issue just finally got raised. So we're deep into this case. And these jurisdictional issues do come along, perhaps sometimes at the very end of the case, which is relevant to your concern that if the jurisdictional issues are raised at the end of the case, and there's no jurisdiction in the district court, the tribes are essentially left without a remedy. They are out of court. There's no question about that. Would that be resolved by filing the Court of Federal Claims case first? Assuming TCON isn't a problem, yes. That would be the case. That would probably be a simplistic solution because the government would very likely challenge that position also on the TCON. There's no question that's going to be teed up and challenged in the very near future. I understand that there are, I want to say, 111 trust mismanagement cases pending in both the CFC and the district court. And I might be wrong with the numbers, but I think there are about 50 or 55 in the district court and about 40 that are in both courts. There are many, many cases that fall in the same situation. And the TCON situation where someone filed in the CFC first and then in the district court will be, in my view, will be brought up by the government here in the relatively near future. Of course, I'm not in control of that. Neither are the plaintiffs' counsel and control of when these jurisdictional issues become raised. But what's your view as to whether the aspect of love ladies that we've been talking about, that is the ability to proceed in the court of federal claims after a jurisdictional dismissal in the district court, whether that survives Tejonem? Well, it certainly, Tejonem does not address that issue. As your Honor is correct, it wasn't even raised in that issue, in that case. And I believe it would survive. It was just simply moot in that decision. That decision is a relatively narrow decision, and it only addresses whether or not there is a two-pronged approach or a single-pronged approach in the analysis of 1500. And I think if that narrow decision is applied to the relevant case law, the love ladies jurisdictional issue does survive, to answer your question. I believe that when we were here two and a half years ago, we talked about relief almost exclusively. I don't think the issue of operative facts really came up because in these cases, the reason why plaintiffs file in both jurisdictions is because complete relief is not available in one or other court entirely. And so these cases are filed where they are, and it's all relief-driven. Now that relief is out of the picture, I believe that in the single-pronged approach, that the Eastern Shawnee complaints do present different operative facts and should survive even a 1500 analysis. Now, love ladies does say that operative facts do not include every fact in the complaint, but instead require that the plaintiffs do not include every fact in the complaint. So that's not the aspect of love ladies that I was asking. The hypothetical we're dealing with here is if the district court dismisses for one jurisdiction, does 1500 apply? Love ladies seems to say that it does not. And then that leads to the second question, that if love ladies does survive to HONO in that respect, is it appropriate to stay a resolution of the court of federal claims case pending a resolution of the jurisdictional issue in the district court? Well, that approach would certainly not leave the tribe without a remedy if, in fact, there was no jurisdiction in the district court. I suppose the problem with the jurisdictional issue in the district court is it has essentially been pending for the last, I want to say, three and a half years. I believe it is before the court, and I don't want to misspeak to this panel, but I believe that jurisdictional issue, there's some aspects of that that have not been ruled for some time. Before which court, in the district court? In the district court, and what I'd like to do is have the opportunity to... Before you move on, though, I want to follow up on Judge Dykes' point. I'm going to read you a quote from the very last paragraph in TOHONO, the Supreme Court's TOHONO. Should the nation choose to dismiss the latter action or upon that action's completion, the nation is free to file suit again in the CFC if the statute of limitations is no bar. What that doesn't say is if the nation should choose to dismiss the district court action or upon that action's completion, the CFC case is allowed to continue to proceed. It says you could refile. The Supreme Court does not allow for the option of continuing the proceeding in the CFC, but it would absolutely recognize and accept a refiling once the district court case is gone. Doesn't that preclude the love lady's argument that is being discussed here about whether or not the CFC case that was pending at the same time as the district court case could continue to go forward? It certainly would. I think the Supreme Court was rather stark and clear in its decision, and that is that if the tribe filed in the district court first and then in the CFC, um, the path for the tribe would be to dismiss its case in the, in the district court completely and then refile in the CFC. And then of course, the issue of, uh, statute of limitations would, um, would be a huge issue in that, in that refiling. But I'm, I'm not clear about what you're saying. I think what Judge Moore, if I understood correctly, what Judge Moore is asking you is, is the survival of love ladies as we've been discussing it precluded by the, by the last paragraph of the Supreme Court's decision. I thought your position was that love ladies survived Tohono. Well, the problem with, with the Tohono decision, it doesn't specifically address it. I recognize that there's a conflict there, and I believe that by the Supreme Court not addressing that issue in the Tohono decision, that that portion of the love ladies case survives. The jurisdictional issue does survive. So when the, when the Supreme, so just so I, I want to make sure that we are really clear on this. So when the Supreme Court says, uh, if the district court action is dismissed or completed, you can refile and then there would be no bar. Uh, you don't believe that that indicates their view that you would have to refile to restart the CFC action as opposed to being able to just continue the one that has been pending all along. Well, I think what the Supreme Court suggested there was an option. And you have the, oh, so you think that this sentence should be interpreted as you have the option to refile or alternatively, you also have the option to continue the same suit. Well, I think that what the Supreme Court did was it simply said, here's a, here's a potential way around this. If you dismiss the initial case. The very first, the sentence that precedes this one says the holding here precludes the CFC from exercising jurisdiction over the nation suit while the district court action is pending. The very next sentence says, should the district court action be completed or dismissed, then you could refile in the CFC. And you don't think those two sentences in conjunction preclude a court from continuing the CFC action after the district court action is dismissed as opposed to requiring a new suit to be filed. I think it falls short of requiring the new suit be filed. I wish they would have specifically addressed the Lovelady's case. They did not. I think that the Supreme Court took a rather stark interpretation of its jurisdictional ruling and saying that, you know, if the tribes don't like it, they can always go to Congress have 1500 taken away. That's been tried before and it's failed, but hasn't been successful. No, isn't the judge Morris position. By indicating by implication, the Supreme Court has limited lovely. At least that paragraph that sentence that she's reading. I believe that. That's certainly what that that provision provides. And that is, is that an option for the tribe is to over plaintiffs in general is to dismiss their district court actions and refile. And, uh, you know, if there's a statute of limitations problem, and that's the problem of the plaintiff moving forward, but they're not talking about the jurisdictional question. Correct. And they don't. They don't specifically address the jurisdictional issue race and lovely. So. I would like to continue to address the issue of whether or not we have different operative facts in this case. As opposed to. Case in the CFC. Here, really, we have a situation where. We're talking about different conduct being analyzed in both cases. In the district court, we're solely talking about the obligation of the United States government to provide trust accounting. That is the only conduct and whether or not if an accounting has been issued, whether or not it is a true, complete and effective counting according to law. It's entirely different than what has been set forth in the CFC complaint, which is transactional driven. All the conduct that is to be analyzed in the in the CFC case is. Was the conduct of the government with in respect to collecting rents, investing monies, managing trust assets were those that conduct. In keeping with a trustee's obligations under the law, these are two totally separate things, and I believe even under the even after. This case, these two cases represent entirely different operative facts. And and as such is not a bar. If you take a look at the underlying CFC decision in the case. The judge essentially said. That the two cases in total were almost identical violations of fiduciary duty. The facts in the nation's two suits were all for all practical purposes. Identical. The Supreme Court in total said, indeed, it appears that the nation could have filed two identical complaints. Save the caption and prayer for relief without changing either suit in any significant respect. These were two exact same complaints. Requesting slightly different relief and found in the two case in the two jurisdictions. It's not the case here in Eastern shiny. The Eastern shiny we took extreme care to file two separate cases based on separate. Conduct the conduct that is being analyzed is entirely separate in both cases. Those are the operative facts. The operative facts in the case are according to love ladies. Operative facts have some link between the facts and the elements of the claim to be proved. So if we're going to prove in our district court case that an accounting is either mandated or has not been provided. That's the conduct that's being analyzed in that case. In the quarter federal claim. At CFC case, we're talking about transactional driven conduct. Did the government act as a fiduciary? Did they reach level by by the appropriate level conduct of a fiduciary? Those are two entirely different factual scenarios. Same operative, different operative facts. There are some, of course, same the same background facts that does not affect the analysis of the court. I'd like to say you're saying we should remand it back to the court of federal claims and make that analysis. Whether or not they have jurisdiction on the basis of a different complaint. Those filed in the district court. Correct. I think this court can rule that there are different operative facts play in the court federal claims case and remand back to the to the trial court level on that basis. But didn't you already have your day in court on this? I mean, the opinion that we issue, of course, it's been vacated now, but here's the quote. The plaintiff here does not persuasively dispute that the claims in the district court and the CFC arise from the same set of operative facts. So, I mean, you argued this last time you were here and the majority said you lose on the operative fact question that your argument didn't persuasively raise a dispute there. So, the Supreme Court didn't put any gloss on what it means to be operative facts that would in any way as far as I can tell in Tohono suggest that the court was wrong in that decision. So, if we are not going to conclude or change our mind on operative facts, what what would you have us do then? What do you think is the appropriate action for this court to take? Well, what I'd like, uh, I would like the opportunity to provide some supplemental briefing on the 702-704 jurisdictional issue. I think it's important. But there's no motion, there has been no dismissal here in the district court. So, 702-704 issue only exists after a district court has dismissed for lack of jurisdiction. The question then becomes, can the action continue even though it might have been improper when filed or not? But that those set of facts just don't exist in this case. There has been no dismissal. So, what is it that this you would have this court do in light of that? Well, what I would have this court do is then stay the court of federal claims case pending a jurisdictional ruling in the district court. Wouldn't it seem strange for us as a matter of invasive trial practice for an appellate court to demand that the court of federal claims stay in action? So that a different action in the district court where the issue of jurisdiction has not even been raised by either party in that case, even though the government says it may well raise that issue, we are going to tell the court of federal claims it must stay it. And now, how are we really going to control the district court action? How long is this case going to be stayed given that no party has actually raised the jurisdictional issue in the district court case? So, it seems that would be a peculiar exercise of our appellate authority over the trial management process of the lower court that we supervise. I don't see how we could possibly do that. It's a quandary, but I would tell you that it seemed to do no harm, no prejudice to anyone to go ahead and stay this case pending the resolution of jurisdictional issue with the district court. How are we going to make the district court address that jurisdictional issue? What power do we have over them? No party has even raised the issue there. I don't believe you do have the authority to do that. So, we're going to have the court of federal claims stay indefinitely in the event that a jurisdictional issue does get raised in the other court, and then the district court decides it? How do we do that? That doesn't seem like good trial management. And I'm just wondering as an appellate court if that is beyond our supervisory authority. It may very well be, Your Honor. Does the statute of limitations impact your claims if you dismiss the aspect of the district court case and then proceed only in the court of federal claims or dismiss the court of federal claims while the district court case is still pending? As is the case with many of these issues, Your Honor, potentially, of course it does. There is an argument that the statute of limitations ran at the end of 2006. That would have to be revisited. Of course, statute of limitations would be the main pivotal issue, initial issue in the refiling of these cases, absolutely. Has any analysis been made of that? There has been. Yes, I believe that the tribes would survive that challenge, but it's an unknown. There are arguments on both sides. The issue was triggered, these cases, the issue was triggered if the government had provided an accounting back in 1999, and the statute on that ran in 2006. So the issue is whether or not, you know, one issue in the statute of limitations argument is whether or not that constituted, those accountings constituted an accounting, a legal accounting, thereby triggering the statute in the first place. There's an argument that suggests that was not the case. And there's other arguments to indicate that as long as the government is a trustee to the tribes that the statute doesn't run. There are others. But you still have the six-year statute of limitations in the court of claims. That's correct, Your Honor. Absolutely. Don't you have an interest in having the jurisdictional issue in the district court resolved? And couldn't you request that it be resolved at an early stage? We could, Your Honor. Presently, we're in a, in a prolonged temporary stay, attempting to resolve these cases through mediation. And so that's why those issues have not been raised. That's one reason why those issues have not been raised. But, yes, we absolutely could. That's within our purview, so within the purview of the government to do that, raise those issues. The court can raise it on its own issue, on its own. Well, I'm just, I'm concerned about the, as Judge Moore is, about the notion of an indefinite stay of the court of federal claims decision for years while everybody sits on the case and does nothing. And that does seem to be problematic. So the question is, is there some mechanism to bring this to an early resolution? Yes, I believe that the jurisdictional issue can be raised. Doesn't the stay work in the government's favor at that point? Because if it is stayed for the next 15 years, there would be no prejudgment interest eventually if you do get a judgment against the government. Well, the stay works both in the favor and against both parties. We agreed to the stay for certain reasons. The government agreed to the stay for certain reasons. We have no intention of, you know, litigating these cases indefinitely. These cases have a life of their own. They just go on forever. You know that. I'm a contingency fee lawyer. I need to get these things resolved, Your Honor. Now, that comment aside. Who has this district court case now that Judge Robertson has left the bench? Did he originally have this case? Lambert. Oh, this case. Robertson did have this case, yes. And has it been reassigned? It has been, Your Honor. Who's the new judge? Hodge? Hogan. Hogan. Thank you. I almost said Hodge. Hogan, yes, Your Honor. Yeah, and he's continued the general stay of the litigation that was in place with the prior judge, Judge Robertson. Thank you. Thank you. Daniel, we'll give you two minutes rebuttal since we asked you to stand up first. That's fine. Thank you. I'd like to address Loveladies and the fact that the Supreme Court didn't cite Loveladies. It's not the Supreme Court's normal practice to cite all of a court of appeals decisions which might be overruled by overruling the case that comes before the court. The court gives the court of appeals, I believe out of respect, the opportunity to apply the Supreme Court's mandate in an appropriate way. The fact that Loveladies was not specifically cited, I think, given the rationale, which was pretty clear in Tohono, despite the disposals of this case. Now, does that mean also that because they didn't cite Bowen, that Bowen is still extant? I'm not familiar with the, is it Bowen? Bowen versus Massachusetts. Oh, Bowen versus Massachusetts. Well, Bowen, of course, remains good law. It does. As modified by or as clarified by Department of Army versus Blue Fox. The fact that it didn't cite Loveladies, I think, can be really not relied upon for much. Secondly, the court's already decided this case on operative facts. Of course, the opinion was vacated, but I think it'd be very difficult to conclude otherwise. In fact, Tohono, I think, broadened the operative facts inquiry by making it, that inquiry turn on the, whether the underlying facts are such that they might trigger claim preclusion under the transactional approach to res judicata. So, at the end of the day, Tohono disposes of this case, and the CFC's judgment should be affirmed. Thank you, Mr. Chairman. Case is submitted. All rise.